## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2019, 11:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Richard R. Beck, Sr.
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard R. Beck, Sr.,
*Appellant-Petitioner,*

v.

Indiana Parole Board,
*Appellee-Respondent.*

July 31, 2019

Court of Appeals Case No.
19A-MI-525

Appeal from the Miami Circuit Court

The Honorable Timothy P. Spahr, Judge

Trial Court Cause No.
52C01-1812-MI-495

**Najam, Judge.**

## Statement of the Case

Richard R. Beck, Sr. appeals the trial court's summary denial of his verified petition for writ of *habeas corpus*. Beck presents three issues for our review, which we consolidate and restate as the following two issues:

> 1. Whether the trial court erred when it denied his petition for writ of *habeas corpus*.
>
> 2. Whether his sentence violates the prohibition against double jeopardy.

We affirm.

## Facts and Procedural History

On January 14, 2005, Beck was sentenced following his convictions for burglary, as a Class B felony, and residential entry, a Class D felony, and his adjudication as a habitual offender. The trial court imposed the following sentence: thirteen years for the burglary conviction, enhanced by ten years for being a habitual offender, and three years for the residential entry conviction. The trial court ordered the sentences to run consecutively.

On July 16, 2016, due to accrued credit time Beck finished serving his sentence for his burglary conviction and the habitual offender enhancement ("Sentence 001") and, on July 17, began serving his three-year sentence for his residential entry conviction ("Sentence 002"). As of July 16, Beck attained "parole status" with respect to Sentence 001. Appellee's App. Vol. 2 at 72. On March 23, 2017, the Department of Correction ("DOC") released Beck to finish his

Sentence 002 in community corrections. And, based on his accrued credit time, Beck finished serving Sentence 002 on October 14. However, on that date, Beck continued to be on parole for Sentence 001, which was set to terminate no later than July 16, 2018.

[5] On February 2, 2018, Beck was "declared delinquent," and a "parole violation warrant was issued" on February 22. *Id.* at 89. Beck admitted to two parole violations. The Indiana Parole Board revoked his parole and ordered him to serve the balance of his sentence for Sentence 001 in the DOC.

[6] Thereafter, Beck filed a *pro se* petition for writ of *habeas corpus* in which he alleged that he was being illegally held in the DOC for the balance of his Sentence 001. In particular, Beck asserted that, when he finished Sentence 001, the Parole Board "turned [him] over" to Sentence 002, thereby "effectively" discharging him from Sentence 001. *Id.* at 8. The State filed a response and motion for summary disposition of Beck's petition. Beck filed a response to the State's motion and provided additional legal argument and exhibits in support of his petition.

[7] The trial court granted the State's motion for summary disposition, denying Beck's petition for writ of *habeas corpus*. The trial court made the following relevant findings and conclusions:

> 5. Beck alleges that his current confinement is illegal because the remainder of his time under Sentence 001 was discharged because that sentence was "turned over" when he began serving

his time under Sentence 002. This argument is unsupported by fact or law.

6. On July 16, 2016, Beck reached "parole status" on Sentence 001. The next day, July 17, 2016, Beck began serving Sentence 002. Beck hit "parole status" for Sentence 002 on October 14, 2017. That same day, Sentence 002 was discharged and he was released to parole on Sentence 001.

7. While on parole, Beck was declared delinquent effective February 2, 2018. A parole violation warrant was issued on February 22, 2018, and served on April 11, 2018.

8. Beck pled guilty to his parole violations under rule nos. 2 and 10 and pled not guilty as to rule no. 7. On September 25, 2018, Beck's parole under Sentence 001 was revoked for violating rule no. 7: criminal conduct, possession of methamphetamine and rule no. 2: residence. Beck's new "projected release date" is June 21, 2022.

9. With limited and unrelated exceptions, "when a person imprisoned for a felony completes the person's fixed term of imprisonment, less the credit time the person has earned with respect to that term, the person shall be . . . released on parole for not more than twenty-four (24) months, as determined by the parole board. . . ." Ind. Code § 35-50-6-1(a). "Ind. Code § 35-50-6-1(a) 'makes it clear that a felon is released to either parole or probation; he is not completely discharged.'" *Hannis v. Deuth*, 816 N.E.2d 872, 876-77 (Ind. Ct. App. 2004) (quoting *Page v. State*, 517 N.E.2d 427, 430 (Ind. Ct. App. 1988), *trans. denied*). An offender "released on parole remains on parole from the date of release until the person's fixed term expires, unless the person's parole is revoked or the person is discharged from that term by the parole board." Ind. Code § 35-50-6-1(b). Finally, "[a] person whose parole is revoked shall be imprisoned for all or part of the remainder of the person's fixed term." Ind. Code § 35-50-6-1(c).

10. Beck is properly incarcerated by IDOC for all or part of the remainder of Sentence 001 because Sentence 001 was not "turned over" and his parole obligation on that sentence survived the discharge of Sentence 002.

11. When Beck reached "parole status" on July 16, 2016, on Sentence 001, his parole obligation was scheduled to continue for not more than twenty-four months, or until July 16, 2018. Beck's mandatory "parole status" on Sentence 001 was in no way "discharged" or even "turned over" when he began serving Sentence 00[2] on July 17, 2016. *See Parker*[ *v. State*], 822 N.E.2d [285,] 288 [(Ind. Ct. App. 2005)]; *Hannis*, 816 N.E.2d at 877.

\* \* \*

13. Beck's argument that his sentence was "turned over" has no merit under *Meeker v. Ind. Parole Bd.*, 794 N.E.2d 1105 (Ind. Ct. App. 2003).

14. *Meeker* does not apply to the facts of this case. The parole board was not involved in going from Sentence 001 to Sentence 002 because it was a mandatory release under Indiana Code Section 35-50-6-1. Moreover, there is no evidence to support the claim that the parole board "turned over" his sentence.

15. Beck's circumstance is instead comparable to various instances where in dealing with the transitioning from one sentence to another, a consecutive sentence does not result in the discharge of the previous sentence where the moving party provided no evidence that the Parole Board used the term "turn over.". . .

16. The evidence shows that Beck reached parole status on Sentence 001, served Sentence 002, and was then released to parole on Sentence 001, which is entirely permissible under Indiana law. *See Hannis*, 816 N.E.2d at 877; *Mills*, 840 N.E.2d at 360.

17.  Furthermore, Beck improperly argues that his current confinement in IDOC under Sentence 001 is illegal pursuant to Indiana Code section 35-50-6-1(a)(2).

18.  Indiana Code section 35-50-6-1(a) provides:  that after a prisoner completes the fixed term of imprisonment minus the earned credit time, and was assigned to a community transition program, the offender may be discharged without the requirement of parole on that sentence they are serving in a community transition program.

19.  Beck's modification to Community Corrections was for Sentence 002, so Beck could be discharged without the requirement of parole on Sentence 002 alone.  This part of the statute, and the Sentence 002 modification, has no effect on his current sentence for Sentence 001.  Beck is not discharged from IDOC like he claims.

*Id.* at 126-28.  This appeal ensued.

# Discussion and Decision

## *Standard of Review*

The parties do not dispute the facts on appeal; rather, they disagree as to whether those facts culminated in a discharge or expiration of Sentence 001. Since the issues on appeal are pure questions of law that do not require reference to extrinsic evidence, inferences drawn from that evidence, or

consideration of credibility issues, we review them *de novo*. *Hale v. Butts*, 88

N.E.3d 211, 214 (Ind. Ct. App. 2017).[1]

### *Issue One:  Writ of Habeas Corpus*

[9]     Beck contends that he is being "unlawfully restrained of his liberty" because:

he was "effectively discharged" from Sentence 001 when he began serving

Sentence 002: therefore, he could not have been on parole for Sentence 001 at

the time of his alleged parole violations and there is no "balance" of Sentence

001 for him to serve.  Appellant's Br. at 8.  Beck urges us to hold that this

court's opinion in *Meeker* is dispositive of his appeal.  In *Meeker*, the defendant

was on parole for dealing drugs when he was convicted of new alcohol-related

crimes, and the trial court ordered him to serve the remainder of his sentence

for the prior dealing conviction.  While incarcerated, the Parole Board decided

that Meeker should be "'turned over to another commitment[.]'"  *Meeker*, 794

N.E.2d at 1107.  After his release, Meeker was placed on parole, with the

dealing conviction as the underlying basis for that parole.  Meeker violated his

---

[1] The trial court treated Beck's verified petition for writ of *habeas corpus* as a petition for post-conviction relief.  Beck does not challenge that determination.  However, we note that, under Indiana Post-Conviction Rule 1, a petitioner must file a petition for post-conviction relief in the court of conviction (rather than a petition for a writ of *habeas corpus* in the court in the county of incarceration) only when he attacks the validity of his conviction or sentence and/or does not allege that he is entitled to immediate discharge.  Here, Beck does not attack the validity of his conviction, but he alleges that he is entitled to immediate discharge. Accordingly, the trial court should not have treated Beck's petition as a petition for post-conviction relief.  *See Partlow v. Superintendent, Miami Corr. Facility*, 756 N.E.2d 978, 981 (Ind. Ct. App. 2001), *superseded by statute on other grounds*.  In any event, because Beck asks us to decide the merits of his case, and because the trial court here was the court of proper venue, we need not address this issue, nor do we need to address whether summary disposition of Beck's petition was improper.  *See id.* (deciding *habeas corpus* petition on the merits despite trial court's misclassification of the petition as one for post-conviction relief).

parole, and he was sentenced to serve the remainder of his sentence for dealing. On appeal, we held that the "turn over" by the Parole Board amounted to a discharge from his dealing sentence and, thus, that Meeker could not be required to serve the remainder of that discharged sentence. *Id.* at 1109.

[10] However, here, as the trial court correctly found, *Meeker* is inapposite. First, unlike in *Meeker*, the Parole Board did not "turn over" Beck's commitment when he completed Sentence 001, minus his credit time. Second, there is no evidence that Sentence 001 was otherwise discharged. And third, contrary to Beck's assertion, nothing in statutory or case law prohibits a prisoner from being placed on parole status for one crime while serving a prison term for a second consecutive sentence.

[11] Beck's contentions on appeal are analogous to those we addressed in *Hannis v. Deuth*, 816 N.E.2d 872, 877 (Ind. Ct. App. 2004):

> After completing his eight-year sentence less credit time, Hannis still had to serve . . . consecutive two-year sentences. The parole statutes make no specific provision for dealing with consecutive sentences. However, it is clear that with respect to any given sentence a person is in one of four stages. First, he is waiting to start serving the sentence, as here Hannis was waiting to start serving the concurrent two-year sentences while he was serving the eight-year sentence. Second, he is serving the sentence. Third, he is on parole on the sentence. Fourth, he is discharged from the sentence. Under the statute, when Hannis completed his eight-year sentence less his credit time, it was mandatory that he be released on parole for the lesser of twenty-four months or the remainder of his fixed term, approximately four years and four months. As a result, Hannis completed his eight-year

sentence less his credit time on November 22, 1999, and was then on parole for twenty-four months, i.e., until November 22, 2001.[] Although Hannis was on parole from the eight-year sentence, he also had to serve his remaining concurrent two-year sentences, which were consecutive to the eight-year sentence. Because of the mandatory nature of Ind. Code § 35-50-6-1, we conclude that, although Hannis was on parole for the eight-year sentence after November 22, 1999, *part of that parole period passed while he was in prison serving his concurrent two-year sentences*.

On August 24, 2000, upon his completion of the concurrent two-year sentences less credit time, Hannis was released to parole on the concurrent two-year sentences. . . . Hannis had started serving the concurrent two-year sentences on November 22, 1999. Thus, by coincidence, both the parole on the eight-year sentence and the parole on the concurrent two-year sentences ended on November 22, 2001. For the parole board to discharge Hannis on the eight-year sentence, he had to complete the lesser of a twenty-four month period of parole or his fixed term had to expire. I.C. § 35-50-6-1(b). Neither of these two events had occurred. Hannis was still on parole from the eight-year sentence and the concurrent two-year sentences when he was arrested for a new violation and violated his parole. Consequently, the parole board properly found that Hannis had violated his parole on the eight-year sentence and ordered him to serve the remainder of the sentence.

(Emphasis added). Likewise, here, because the Parole Board did not "turn over" Beck's commitment for Sentence 001 when he began serving Sentence 002, and because Sentence 001 was not otherwise discharged, Beck was on parole for Sentence 001 when he violated his parole, and the Parole Board's order that Beck serve the remainder of Sentence 001 was not improper. *See id.*

[12] Further, to the extent Beck asserts on appeal that his discharge from the DOC on Sentence 002 barred his placement with the DOC for the remainder of Sentence 001, Beck is incorrect and does not support that contention with citations to relevant authority. The trial court did not err when it found that Beck's discharge from the DOC on Sentence 002 had "no effect on his current sentence for Sentence 001." Appellee's App. Vol. 2 at 128. We hold that the trial court did not err when it denied Beck's verified petition for writ of *habeas corpus*.

### Issue Two: Double Jeopardy

[13] Finally, Beck asserts that, by "having [him] serve the same sentence twice[,]" the Parole Board "is placing [him] in double je[opar]dy." Appellant's Br. at 9. Once again, Beck does not support that contention with citation to relevant authority. Moreover, Beck is not serving the "same sentence twice." Rather, he is serving the *balance* of Sentence 001, which was an aggregate twenty-three-year sentence of which he previously served only approximately eleven and one-half years. As this court has observed, "although credit time can get a defendant out of prison in fewer months or years than his actual sentence, if he violates his parole during the parole period, the balance of the actual sentence still remains to be served." *Ind. Dep't of Corr. v. Bogus*, 754 N.E.2d 27, 31 (Ind. Ct. App. 2001), *superseded by statute on other grounds*. Beck's sentence does not violate the prohibition against double jeopardy.

[14] Affirmed.

Bailey, J., and May, J., concur.